Your Honor, this is the final case of the morning, column 211, 12501E, Ben Reed, Daniel K. On behalf of the at-large, Ms. Sally Swiss. On behalf of the athlete, Ms. Teresa Edward. You may proceed. Good morning, Your Honor, Mr. Counsel. Good morning. Sally Swiss for the people of the state of Illinois. May it please the Court, this is an appeal from a trial court's order which granted Daniel K.'s petition for discharge from his inpatient involuntary admission. At the heart of the appeal is our contention that many of the evidentiary rulings, rulings which actually constricted the Assistant State's Attorney's ability to ask relevant questions, whether the trial court abused his discretion and did so because it considered the scope of the hearing to be so narrow as to only consider Daniel K.'s condition at this point, given that he was in an inpatient setting, given that he was getting treatment, and that it did not allow the evidence to come out through the treating doctor as to what brought him to this place, as to what his past symptoms had been, as to what brought him into hospitalization, what caused his... And before we get into all those, if you're making this argument, I'm thinking we have a threshold question. As you alluded to, the respondent has been discharged, is gone from custody. Yes. So I think we need to talk about whether the exceptions to the mootness document apply as a threshold question because if they don't, we'll never get to your arguments. Okay. Sure. So tell us why the exceptions to the mootness document should apply here. Okay. I believe this is a public interest exception to the mootness. And the reason for that is there's very little case law, any type of law at all, on discharge proceedings. How they're to be handled, what the scope of the question to be determined, other than the statute, the plain language of the statute. And that actually refers more than anything just to involuntary admission statutes. So we have public interest exceptions that arguably could apply and exceptions for what case law alludes to capable of repetition may come up with other future cases. So can you tell us succinctly why those apply here and allow us to go on with the merits of the appeal? Well, I think that there's a need for authoritative determination here because I think this could occur many times in this type of hearing over and over again. In most cases, we get it when the respondent has been discharged, right? Well, that's right. In many cases. Yeah. And so the discharge comes up quite often, yet we don't have much law on it. And the way this trial court interpreted this statute would preclude the state from bringing in all sorts of evidence which we think is relevant to a determination of the expectation of conduct on the part of this person. And that is actually at the heart of the issue here is to whether or not, not just is he right now capable of taking care of his physical needs while, you know, within this institutional setting. But is he capable and is he reasonably expected to be able to do so upon discharge? That's the implicit question here. And we believe there's no guidance on that. And obviously we are totally opposed on this in terms of both sides. One side saw it as totally this is the issue. It's only as to what's happening to him right now. Is he a danger to others right at this point? And we saw it as upon discharge, which is implicit in this, will he reasonably be expected to be a danger to others? Will he be able to guard against danger to himself and to take care of his own needs? So we believe there's a need for authoritative determination from the guidance so that this does not happen again. And there is a likelihood of the recurrence of the question. You also argue that the granting of the discharge was not supported by the record. That's correct. I mean, how does that fall under the movement's exceptions? Well, that's our alternative argument. And, again, I think it comes down to the court didn't understand the scope of the hearing and the determination to be made. And our response to that is there was even sufficient evidence, even with all these erroneous evidentiary rulings, there was sufficient evidence upon which we could even say that manifestly this is erroneous, this judgment. Under Alpha HH, though, I mean, if we're talking about the specific facts of this case, generally movements would apply. Well, that's correct, unless, of course, we need this case. In terms of this person, he's been discharged. And so I understand that in terms of, you know, doing anything in terms of doing okay, there's really nothing to be done. But I think that given that we have so little law on this discharge procedure and what is relevant evidence, we really are looking at the possibility that there's the actual purpose of the statute is not being met by the way that the evidentiary hearing has been held in this case. Moving on to another issue chronologically, and you alluded to this, the court's denial of evidence about the effect of respondents announcing he was not going to take medication. And there's some earlier cases that talk about does that fall within the realm of speculation? Therefore, was it proper for the court to exclude that? Or how do you distinguish this from other cases? I distinguish it on this basis. It's his present stated intent, and that's the difference. This isn't will he continue to take his medication. Always a concern with schizophrenia, I think, is once they get better, they often get up and then may or may not take that. You know, once they feel better, they may think they can stop the medication. To say, well, at some point he may stop the medication, and if so, his behavior will deteriorate and we will find that he is again subject to involuntary admission on an outpatient or inpatient basis. That's not what we're at here. This particular respondent, Daniel Kaye, said, and both Dr. Welsh and Dr. Paul, Dr. Welsh being the examining and Dr. Paul being the treating physicians or psychiatrists, both said that it was clear to them that his intention at this point was if he's discharged, he's not taking the medication. So in other cases, there was a little bit of the realm of speculation. If I'm reading you correctly, you're saying here this respondent clearly announced he was not going to take the medication, so there was no speculation as to whether or not that would occur, thus allowing for testimony as to what the effect would be. That's exactly right. When you have a present stated intention to do something, which, I mean, this discharge could have been made right at this point. He's now saying the minute that happens, I'm not taking my medication. You have to consider that in terms of whether or not he then is subject to involuntary admission. Was this a declaration against interest, or was this an opinion based upon a reasonable degree of medical certainty? You mean his own testimony? No, the testimony that you were proffering to the judge. He called it speculative, so the question I have to you is, was it speculative because they didn't say that it was based upon a reasonable degree of medical certainty, or did he decide that it wasn't a declaration against interest? When he said it's speculation, was he referring to it's so far off in the future, or was he suggesting that these experts weren't competent to testify? The point is that in some instances this may be an abuse of discretion, in other instances it may be as a matter of law incorrect. Okay. Yes. I think the objection, and it was stated over and over in terms of not only this evidence, but in terms of much of the evidence throughout, is that anything that went to future conduct was basically speculative because it was remote, not necessarily going to occur, and therefore outside of the scope of the hearing. That was the objection, and that was the argument made by counsel over and over in terms of much of the evidence. In terms of both past and future, future prediction, which is what really the statute calls for, is in terms of, and this much the state was able to get in. The doctor, Dr. Paul, said that in fact he needed treatment. Daniel K. did not believe he needed further treatment. He did not know he had a mental illness. He didn't have any insight into it. He didn't intend to take his medication. But Dr. Paul said he does need further treatment. We're in disagreement on that. He does have a mental illness. And something which was stricken, but which I think would have been very relevant, is he needs both his medication and the institutional setting, the inpatient setting, because the medication and that institutional setting are what brought him to the condition he is now, the much improved condition he is in now. But he needs both of them, and the medication even alone, without the inpatient, without the institutional, would not have brought him to this one. They were both needed, and he still needs treatment. That's his opinion. And that's a prediction, of course, into the future. But somehow lost in this is the fact that all past behavior, something which the statute actually calls for, to be admitted. And let me go over some of why I think the statute itself shows that this type of past behavior, why he came into hospitalization, something all these things were objected to and sustained, what type of treatment he had. It's all relevant. The discharge statute itself states the petition is to include the underlying circumstances for the admission, as well as the reasons for why the person believes he needs to be discharged. The person may not be discharged unless, or if he is, excuse me, the person may be discharged if he is not subject to involuntary admission. And the involuntary admission statute in the last paragraph says, the court may consider evidence of the person's repeated past pattern of specific behavior and actions related to the person's illness. Now, why would that be, of course? You know, not only has the legislature said that that is a valid consideration, a consideration that was not allowed here, but also it's clear that you need to know why the person got to this point to determine that discharging itself, the fact that he will no longer be institutionalized, the fact that he no longer, well, that he will actually be able to say no to his medication, that discharge procedure brings the facts that have up until now been static. It changes that dynamic and makes it clear that we have to consider, will this improvement continue? Was the past behavior in the context in which the questions were asked of the doctor regarding statements of family members, mother? Some of that. It was whether he had reviewed the medical history, whether he had talked to parents or somebody in the family in terms of this person's condition when he came in. But also Dr. Paul was asked, and there was an objection that was sustained, as to what types of behavior he had been exhibiting prior to hospitalization and prior to medication. Was he on medication at the time he came in? Those types of statements. And they were all objection sustained, and if the doctor had already answered, stricken. The specific hearsay objection, though, it doesn't seem like the state actually interposed any reason for overruling that objection. For the hearsay of the family members? That one is a little bit close, except that it was clear from the argument by the assistant state's attorney that, again, they were getting at, have you talked to family members about his history? And I think any treating physician is able to consider what people, family members and the patient coming in, say about the current condition. And it's under that that I would suggest that this should have also been allowed. But if the state doesn't, if there's a hearsay objection to that, and then the state just sits there mute, are we supposed to reverse on that because the trial court is supposed to just overrule the objection? I don't recall if that's what occurred. But if that's what occurred, then that particular. I don't think the state was mute, but I don't think they ever interposed it, and actually any exception to the hearsay rule or the basis for which they were offering this evidence. You know, that may be true in this case. I know that at various points it sort of seemed to morph over from so many objections being made that the argument seemed to just continue and not necessarily really clarify, in particular, each objection and the basis for it, or in terms of the state, in terms of their argument specifically, as to that one particular piece of evidence. What about the ability of the state to call the respondent as a witness? There's an objection that it's tantamount to violating the privilege against self-incrimination. You know, as I pointed out in my brief, we can find nothing which says that the respondent had any type of ability to say that he's not going to take the stand and not going to testify. This is a civil case. This is not a criminal case. There's no Fifth Amendment privilege constitutionally. Now, can we look to the statutory language? Of course we can to see if there's a right granted. But it's the code of civil procedure which is to be followed in this, which allows an adverse party to be called as a witness unless the mental health code were to, like, somehow weigh in on this. There's nothing in the code that ostensibly prohibits that? No, I don't believe there is. The other counsel has said that 5-3-208 shows that, in fact, that the person does not have to take the stand. But 5-3-208 is clearly narrowly, it's to be narrowly construed because it's a statutory right to begin with. And it specifically says that the respondent has the right not to talk to a physician when the physician is examining him for purposes of the initial certificate. That has nothing to do with the discharge proceeding. And, in fact, the discharge proceeding says that Chapter 8, as far as procedural, is what incorporates that language. Chapter 8 has nothing of that sort in it. And so if there's no constitutional right and no statutory right, we believe that the state was able to call. And without some type of discussion, or excuse me, without, you know, any type of right to stand on to say no, there should have been an adverse, at least an adverse inference from the fact that he never did take the stand. You're also objecting to the exclusion of the doctor as an expert, I believe? Well, the only reason we're doing that, Your Honor, is because of the manner in which this proceeded. Honestly, I think that the opinion he was trying to give was that that can absolutely be given by a treating physician. His opinion as to what was wrong with him and what was the likelihood of further occurrences of this behavior. Now, I think what happened is once that was sustained, the objection was sustained and that was not allowed, then the assistant tried to go further and say, well, because the objection was made on the basis of that's an expert opinion. And so it's not allowed. And once that was made, well, then the assistant said, well, then we should qualify him as an expert because he has 45 years of experience. He's board certified. He's been qualified as an expert in hundreds of other hearings. All that was before the court, and the court said, I'm not sure you've shown me that he could be qualified as an expert. So, you know, that was the ruling on that. So we only go to the expert, you know, whether he qualifies as an expert. And the abuse of discretion we, again, think was shown by the trial court if, in fact, his initial ruling was correct. We don't believe it was. We believe that as a treating physician, certainly Dr. Paul could have offered that opinion. But he would still have to be qualified to offer that opinion. Qualified as a, yes, as a psychiatrist and a treating physician for this person. Yes. Are there any other questions of the rise? Is there any CV or resume submitted for offer proof as to establish whether or not this was an expert or not? There was an offer of, well, there was actually, yeah, there was a testimony. He took the stand, and I believe that was all came out through him, that he had this experience, that he had been qualified before many times, that he was board certified. I don't know that there was a CV, actually, that was, you know, given to the court on that. I thought the issue was that he was engaged in alcohol or drug abuse counseling. That was his subspecialty was addiction. But just because you have a subspecialty but you are board certified in psychiatry, I don't think that takes away necessarily from your expertise. And I don't think that was the basis of the objection on that. Thank you, counsel. Do you have time for rebuttal? Is it Byrd or Berge? Berge. Berge, thank you. You may proceed. I apologize in advance if I lose my voice. If what? If I lose my voice. Are you asking us to take judicial laws if there's some bug going around? And you fall a victim to it? I certainly have. When a person is committed to a psychiatric facility, there's a hope that they will be treated, that they will get better. They do this through group therapy, one-on-one therapy, medications, milieu therapy, regular meals, regular laundry, and hopefully the person gets better. That's the whole goal. With Daniel Kaye, that happened. He got better. And so he filed a petition for discharge. He was, at the time, lucid. He was stabilized. Is this the Danny Kaye of white Christmas? Is that what you're telling us? I'm sorry? I said, is this the Danny Kaye of white Christmas? Daniel Kaye? Yeah, of white Christmas. Well, he probably had a white Christmas this year. Never mind. He was not homicidal. He was not suicidal. He did not meet the standard for commitment under Section 1-119. He proved a prima facie case. The state concedes that he proved a prima facie case for discharge. Well, what about the issue, though, one of their threshold or, I think, overarching arguments, is the fact that if somebody announces they're not going to take medication, that it's clear as soon as they leave and done with medication, why would it be improper then for a doctor or the state to be able to call experts to say what effect that would have on the respondent if they walk out of the facility and never take medication again? Why is that not a proper area of input? Because this was not a medication case, and the standard for commitment that the state was proceeding on did not involve not taking medication. What if the respondent... Well, he was taking medication. He was taking medication anyway. So how that came into play is kind of curious. But if he decided not to take medication in the future, which sometimes does happen, he has a right to do that. Ma'am, I'd like to cut to the chase, so to speak. Okay. We've discussed movements. I believe Ms. Swiss has already indicated that your client is not going to be retried, he's not going to be institutionalized unless there is more incident or evidence that he's in need. So telling us all the things that you did don't really seem to address the issue, which is was error committed, not was reversible error committed or was harmless error committed. So I would appreciate it if you would address the legal aspects of the issues that are being presented to us, which is were these error to do, not was this something that your client shouldn't be punished for because of whatever reason. Okay. The failure to allow the respondent to testify as an adverse witness was not error. The commission was very clear about not permitting that to happen. Extending the Fifth Amendment right to mental health proceedings. Now, there was a question whether or not there was anything in the statute that would operate to prohibit the respondent being called as an adverse witness. There seems to be some confusion or mixing of terms in the sense that they talk about self-incrimination as opposed to the privilege of noncommunication or the right to remain silent to the extent that you just don't, you have the privilege not to talk if you don't want to. That's right. And the privilege not to talk isn't necessarily, relates to self-incrimination, correct? But it does, yes, that's correct. So the Governor's Commission or the 60 people that were talking weren't really just the judges and the doctors and the experts on the commission that came up with this privilege. Were they thinking in terms of criminality or were they thinking in terms of merely the right to privacy and the right not to speak? It's because the result of a commitment hearing is the same as it would be in a criminal hearing, and that is the loss of liberty. And it's for those reasons that the respondent is entitled not to speak. In Section 3-806 of the code, the respondent not only doesn't need to speak, he can waive his right to be present. And that was actually decided and noted by this court in Ray Francis K. where the respondent waived his right to be present. And this court noted that there is a constitutional right through the statute, through Section 3-806, to waive your presence and not testify. So if compelled to testify. So if the state wanted to interrogate or have the witness testify or your client testify, what would they do? Would they subpoena your client? Well, they didn't in this case, but they could. And actually it wasn't any notice whatsoever that the state wanted to call the respondent. And the respondent could refuse not to attend the hearing because when there is conflict between the Mental Health Code and the Criminal Practice Act, the Mental Health Code controls. And his waiver of presence would control in that situation. It's not a right not to be there. I mean, if you're subpoenaed and you're rented in, let's say you're in a hospital, and you're rented in from that hospital and you are handed a subpoena, I mean, certainly you have the right not to go if you don't want to go. But if you get those things, you've got to go. And you'd have to testify if you were called as a witness. And you couldn't refuse to answer unless there was some self-incrimination. Well, that demonstrates the conflict between the Mental Health Code and the Civil Practice Act. And the respondent does have a right to not go, even under subpoena, because the Mental Health Code controls. But does the Mental Health Code say that the respondent cannot be called as a witness? Where does it say that? It does not say that in black and white. You're right. But it does say that the respondent can refuse to attend the hearing and waive his right to be present. In doing that, then he does maintain the right to not be called to testify against himself. Well, we do have the Powell case, which you take issue with. Right. But that says that the state can call a person. Right. And as I outlined in my brief, the Powell case was based upon the Keith case, which was addressed by the commission. I'm not sure the Mental Health Code is any different than the Civil Practice Act to the extent that parties are not required to appear unless under order of court to do so. So, to me, it seems that the Mental Health Code is not in conflict with the Code of Civil Procedure. Only to the extent of calling the respondent as an adverse witness. Well, you're using a syllogism in your premises, since he can waive or she can waive the right, therefore they don't have to appear, therefore they can't be subpoenaed. And I'm telling you that the same right to waive their appearance exists under the Code of Civil Procedure for parties in civil proceedings. Now, there isn't a civil liberty interest necessarily involved, but your syllogism doesn't work. At least to the extent that you're attempting to distinguish the Mental Health Code and the right to waive an appearance and the Code of Civil Procedure, you can defend a plaintiff doesn't have to appear, but they better be there if they plan on testifying or if they have been ordered to be there because they're going to be called as an adverse witness, pursuant to notice. Right. If they want to participate, they should be there. Right, but if they want to participate voluntarily and they don't want to, I think his point is does it immunize you from a subpoena? If the respondent can waive his right to be present constitutionally, I think they're... And that means he can't be subpoenaed under your argument. That's what I'm saying. Okay. Well, he can be subpoenaed, but he still can waive his right to be present. Getting back to some of these other issues, though. Okay. The fact that the trial court did not allow the state to go into what brought the respondent into the system, I mean, is that correct? The question of whether the respondent should remain confined in the facility should be based upon a fresh evaluation of his current condition. We're totally turning a blind eye. I mean, let's say he did all kinds of things that tended to hurt others or hurt himself before he came in here. Right. We're just supposed to forget all about that and say he's on his meds now, he's doing fine now, let's let him out. Well, I think it's a given that there was something that happened previously because he was committed. So that's a given. Well, why would that be illogical to bring that out as giving a full picture of what's been going on with this individual? Because what was important at the time of the discharge hearing was his condition at that point. And if the state had evidence that at the time he was homicidal or suicidal or threatening or not caring for his basic needs, they should have brought that evidence forward instead of just looking at the back end and the front end. They needed to look at what was going on currently. And all the evidence demonstrated that was provided was that he was stable. And, yes, he did not believe he was mentally ill, but there's a difference between a mental illness and symptom of a mental illness. So when he does not have any active symptoms of a mental illness, it's not unreasonable for him to say, I'm not currently ill. Does counsel have a responsibility to inform the court if the client tells the attorney that the client will most assuredly cease taking their medication and there's evidence of record to indicate that if the client fails to take the medication that serious and dire results will occur? Does the attorney have the obligation to inform the court of that? I don't believe the attorney has an obligation to inform the court of that. What if the respondent was lying? What if he changed his mind? There are all kinds of reasons for not taking medication. What if he couldn't afford it? You know, how believable is that? Yes, individuals do go off medications at times for many, many different reasons. And if they become symptomatic, that is when the issue is dealt with, not as a prophylactic to keep somebody in the hospital because of what may or may not occur in the future in the exercise of their rights or if they run out of money to buy meds or whether they don't work in the future. So you disagree with the Washington holding? Right, because, well, even in the Washington holding, they pointed out that the person's, which was a horrific case, but the person's current conduct and his current state of psychiatric health was important. They required also a fresh evaluation of his current condition. And in the Washington case, he had sexually assaulted somebody while still in the hospital. And there's no evidence that the respondent had engaged in any kind of that kind of conduct while in the hospital. Well, one of the factors that the court allowed the trial court to look at is the fact that this person did not take his meds before. He was taking medicine. He had a history of that. But the respondent was taking the medicine in this case. I know he was taking it in this case. I'm just saying that in that case, there was a history of not taking the meds, and then there was testimony as to what would happen if he didn't take the meds. This case, I agree, something led your client into the system. He's taking his meds, and you're right, you have to take a fresh look at it then because you can't just lock someone up forever on the thought that something bad may happen in the future. But when that person makes the unequivocal statement that they will not take their meds when they leave, why is it all that relevant? Why can't the trial court just hear all that, process it, and make an appropriate determination? Because the commitment statute doesn't involve medications. It's whether he can care for his basic needs, whether he's dangerous to himself or others. Those are the factors that need to be looked at. And the medication is very much a side issue. I think I'd like to differ. I mean, if he's not on meds and he does these things that lead him into the system, and now he's on meds and he's fine, and he says, I'm not taking the meds when I get out, it doesn't take a rocket scientist to think that he may decompensate very quickly and go back to what led him into the system before. Or it could be that the meds don't work when he gets out. It sounds like you're arguing that the only thing that's relevant material is status and not causality. Am I understanding you correctly? It's the actual behavior and conduct and the psychiatric state of the individual. Now, if that psychiatric state is impacted by medications, that could be a reason why it's impacted, or it could be the stability of the institution. It could be having three square meals a day. There could be all kinds of things that impact that psychiatric stability. But the bottom line is that he was stable. And we don't confine individuals against their will when they're stable. We don't pay for it. We don't deprive them of their liberty when they're stable. We let them go. What's your position relative to the trial court's refusal to allow the doctor to testify as an expert? The doctor was a psychiatrist under the code, under 1-121. He was a psychiatrist. He did not provide any opinion regarding his evaluation. He did not provide a report to the parties. He was not appointed to a- You haven't answered my question, ma'am. My question was, you're talking about what he wasn't allowed to do. I'm talking about he wasn't given expert status. And I'm asking you, was the trial court correct in refusing to give an expert status, as opposed to whether or not he did or he didn't give expert opinions? He wasn't given expert status, and it was correct not to give it to him because he did not establish himself as an expert under the code. The state did not bring out any information regarding a report or opinions, a CV, anything, any writings that he had done, any investigations or research that he had completed. He wasn't established as an expert witness. He was an occurrence witness, and he was a doctor. That was established, but not as an expert. Okay. Thank you. Thank you very much. Thank you. I would ask that the floor be affirmed. Thank you. Ms. Swisher, may we proceed? Yes. Very briefly, Your Honors. The people acknowledge and certainly expect that the court will look at the respondent's current condition in a discharge proceeding. That's not what this is about. This is about whether they can look at past behaviors and whether they have the ability to consider relevant evidence or evidence which shows how he got to where he got to, especially when we know that some of why he got to where he is at this point is going to be taken away upon discharge by the mere fact that he is no longer in an inpatient setting and by the mere fact that he has stated his intention not to take the treatment, the medication, which has brought him to this point. And it is that which is actually in conflict with the purpose of the statute, and the statute is to determine whether this person is subject to involuntary admission, and that requires us to look, the court to look at whether it's reasonably expected that he will be a danger. That's a future prediction based upon past behavior, and it's implicit in the language of the statute. And then very quickly, I just want to point out that, and I believe this was in my brief, but the statute itself has a provision, the discharge statute, which incorporates the provisions of Chapter 8, and 5-3-806 talks about how the respondent must be present unless the court is satisfied by a clear showing, must be present at the hearing, a clear showing that would subject the respondent to a risk of serious physical or emotional harm. So he would be at these, normally he would be at these discharge proceedings, and I believe that that statute, statutory provision applies here. In terms of being able to call him, he should normally be at the hearing, and, of course, the court can always enter an order requiring his appearance. And it's our position, of course, that there's nothing under the statute which prohibits the state from calling him. And that's all I have. Thank you. I'd like to thank both of our attorneys for their arguments today. The case will be taken under advisement with a decision record in due course, and we are adjourned.